## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| **ARSEN KASHKASHIAN, Jr.,** | : | |
| | : | Bky. No. 15-11531 ELF |
| Debtor. | : | |
| _____ | : | |
| | : | |
| **ARSEN KASHKASHIAN, Jr.,** | : | |
| | : | |
| Plaintiff, | : | Adv. No.  15-0514 |
| | : | |
| v. | : | |
| | : | |
| **STEVEN D. LERNER,** | : | |
| | : | |
| Defendant. | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

On March 4, 2015, Arsen Kashkashian, Jr. ("the Debtor") commenced this bankruptcy

case by filing a voluntary petition under chapter 7.  On March 6, 2015, Robert H. Holber was

appointed as interim trustee and has continued to serve as trustee since then.

On November 13, 2015, the Debtor filed an adversary complaint ("the Complaint")

against Defendant Steven D. Lerner ("Lerner"), seeking to avoid certain prepetition transfers of

real property pursuant to 11 U.S.C. §547(b).  Lerner filed a motion to dismiss the Complaint

("the Motion") on January 4, 2016.  The Debtor filed a response to the Motion on January 28,

2016.

For the reasons explained below, the Motion will be granted in large part and the Debtor

will be granted leave to file an amended complaint.

## II.  APPLICABLE LEGAL STANDARD – RULE 12(b)(6)

Fed. R. Civ. P. 12(b)(6) allows a party to raise as a defense that the complaint "fails to

state a claim upon which relief can be granted."  Last year, I described the legal standard under

Rule 12(b)(6) as follows:

> A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual
> allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.
> 1993), and determines "whether the plaintiff is entitled to offer evidence to
> support the claims," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8.
> (2007).
>
> A defendant is entitled to dismissal of a complaint only if the plaintiff has not pled
> "enough facts to state a claim to relief that is plausible on its face." Twombly,
> 550 U.S. at 547.  A claim is facially plausible where the facts set forth in the
> complaint allow the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
>
> In evaluating the plausibility of the plaintiff's claim, the court conducts a
> context-specific evaluation of the complaint, drawing from its judicial experience
> and common sense.  See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d
> Cir. 2009); In re Universal Marketing, Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa.
> 2011) (citing authorities); In re Olick, 2011 WL 2565665, at *1–2 (Bankr. E.D.
> Pa. June 28, 2011).  In doing so, the court is required to accept as true all
> allegations in the complaint and all reasonable inferences that can be drawn
> therefrom, viewing them in the light most favorable to the plaintiff.  See, e.g.,
> Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby
> Township Zoning Board, 458 F.3d 181, 188 (3d Cir.2006).  But, the court is not
> "bound to accept as true a legal conclusion couched as a factual allegation."
> Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555).
>
> The Third Circuit Court of Appeals has condensed these principles into a three (3)
> part test:
>
> • First, the court must take note of the elements a plaintiff must plead to
>   state a claim.

- Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.

- Third, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

Finally, in assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as,] 'undisputedly authentic documents' where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss." Unite Nat'l Ret. Fund v. Rosa Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n.1 (Bankr. E.D. Pa.  Apr. 23, 2010).

In re Bennett, 531 B.R. 68, 71-72 (Bankr. E.D. Pa. 2015).


## III.  STATEMENT OF FACTS

In deciding the Motion, I accept the following facts as true based on the allegations in the Complaint and the documents attached to the Complaint.

In July 2002, Lerner filed a complaint against the Debtor in the Court of Common Pleas, Bucks County, Pennsylvania ("the C.P. Court"), seeking a money judgment based on an asserted breach of contract.  (Compl. ¶ 6).  On April 7, 2008, the C.P. Court entered judgment in Lerner's favor and against the Debtor in the amount of $119,919.20.  (Id. ¶ 7).  Thereafter, Lerner engaged in discovery in aid of execution on his judgment.

On January 5, 2015, Lerner filed a motion in the C.P. Court seeking to hold the Debtor in contempt of court and to compel the Debtor to execute a mortgage or assign his equity interest in

Lerner's favor on five (5) pieces of real property, (id. ¶ 9), as summarized below:

| Property | Record Owner | Debtor's Relationship |
|---|---|---|
| 2501-37 Church Street, Philadelphia, PA | Pennypack Properties, LLC | 50% Member |
| 1255 Gordon Road Philadelphia, PA | Kashashian Trust | Grantor of Trust (created 8/27/98) |
| 244 Myrtle Avenue Feasterville, PA | Nick Madrigale Meats, Inc. | 75% shareholder |
| 959 Fillmore Street Philadelphia, PA | Howard & Ann Foulkrod | rights under real estate instalment sale agreement[1] |
| 1904 Myrtle Drive Bensalem, PA | Kashkashian Trust | Grantor of Trust (created 8/27/98) |

At a hearing held on January 26, 2015, the C.P. Court "directed the Debtor to immediately physically execute the Mortgage instruments" that resulted in the transfers at issue. (Id. ¶ 10).  Lerner recorded the mortgages immediately thereafter.  (Id.).

The Debtor was insolvent at the time the mortgages were executed and recorded.  (Id. ¶ 14).  The mortgages were recorded within ninety (90) days of the commencement of this bankruptcy case.  (Id. ¶ 15).

---

[1]     The Debtor is the purchaser under the real estate instalment sale agreement for 959 Fillmore Street.  Under Pennsylvania law, a purchaser of real estate obtains equitable ownership of the property upon execution of the agreement of sale; further, this principle applies to a real estate instalment sale contract.  See, e.g., In re Belmonte, 240 B.R. 843, 850 (Bankr. E.D. Pa. 1999) (citing authorities), rev'd on other grounds, 279 B.R. 812 (E.D. Pa. 2001); In re Fox, 83 B.R. 290, 294 (Bankr. E.D. Pa. 1988); see generally Anderson Contracting Co. v. Daugherty, 417 A.2d 1227, 1231–32 (Pa. Super. Ct. 1979) (land instalment sale contract purchaser has the same right to cure a default as a residential mortgage borrower under Act 6 of 1974, 41 P.S. §§101 et seq.).

## IV.  DISCUSSION

## A.  Scope of the Motion

As explained above, the Debtor seeks to avoid five (5) transfers that occurred within

ninety (90) days of the bankruptcy petition.  In his Memorandum in support of the Motion,

Lerner addressed only four (4) of the five (5) transfers.  Lerner focused on the four (4) properties

not owned by the Debtor personally, but owned by entities controlled by the Debtor.  Those four

(4) properties  ("the Four Properties") are:

> 2501-37 Church Street, Philadelphia, PA;

> 1255 Gordon Road, Philadelphia, PA;

> 244 Myrtle Avenue, Feasterville, PA;

> 1904 Myrtle Drive, Bensalem, PA.

The Motion does not question the adequacy of the Debtor's claim concerning the

prepetition transfer of the fifth property, 959 Fillmore Street Property and I have not considered

whether the Complaint states a claim under §547(b) with respect to 959 Fillmore Street.  This

Memorandum will discuss the adequacy of the Complaint only with respect to the Four

Properties.[2]

---

[2]    I am aware that the Complaint is structured as a one (1) count complaint seeking avoidance of five (5) transfers and that Lerner's Motion and Proposed Order requests that the entire Complaint be dismissed.  Nevertheless, omission of any discussion of the 959 Fillmore Street Property is glaring and could not have been accidental.

Moreover, as discussed later in this Memorandum, one of Lerner's arguments is that the Complaint fails to state a claim under 11 U.S.C. §547 with respect to those properties owned by entities other than the Debtor prior to their transfer to Lerner.  959 Fillmore Street was owned by the Debtor, not by one of his entities.  See n.1, supra.

Finally, I also am aware that Lerner contends that only the chapter 7 trustee can bring a §547 avoidance action.  This argument would apply as well to the Debtor's claim regarding 959 Fillmore
(continued...)

## B.  Direct Action by Chapter 7 Debtor Under §547(b)

The Debtor's legal theory is that the C.P. Court compelled him to transfer interests in property within ninety (90) days of the bankruptcy filing on account of his prepetition debt to Lerner and that, as a result of those transfers, Lerner will recover more on his claim than he would through a distribution in this chapter 7 case.

In response, Lerner argues that the authority to institute an avoidance action under §547(b) resides exclusively with the chapter 7 trustee and therefore, the Debtor has no authority to bring this action directly.

Lerner is correct.

Section 547(b) provides that the trustee may avoid any transfer of a debtor's interest in property:

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made—
        (A)  on or within 90 days before the date of the filing of the petition; or

        (B)  between ninety days and one year before the date of the filing of the

---

[2](...continued)
Street.  However, as discussed below, Lerner acknowledges that if the Debtor can satisfy the requirements of 11 U.S.C. §522(g), (h), the Debtor may exercise the trustee's §547 avoidance power. Yet, nowhere in his Memorandum does he assert that the §547 claim has not been adequately pled with respect to the transfer of the Debtor's interest in 959 Fillmore Street, except insofar as he asserts that the Complaint does not plead adequately that the transfer was involuntary.  However, I have rejected that contention.  See n.4, infra.

        If Lerner intended to seek dismissal of the Complaint with respect to 959 Fillmore Street on any grounds other than the voluntariness of the transfer, it was incumbent upon him to say so and to set out his legal theory.

petition, if such creditor at the time of such transfer was an insider; and

    (5) that enables such creditor to receive more than such creditor would receive if—

        (A)  the case were a case under chapter 7 of this title;

        (B)  the transfer had not been made; and

        (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. §547(b).

The text of §547(b) could not be more clear.  The provision states that "the trustee" may avoid certain transfers of an interest of the debtor in property.

The Code grants debtors in chapter 11 and chapter 12 cases the powers of a trustee.  <u>See</u> 11 U.S.C. §1107(a), 1203.  There is no equivalent statutory provision in chapter 7.  It follows from the plain text and structure of the statute that a chapter 7 debtor is not granted the powers of a trustee and therefore, cannot <u>directly</u> exercise the trustee's avoidance power under §547(b).[3]

### C.  Chapter 7 Debtor's Action Under §547(b) through §522(g), (h)

### 1.

In his Memorandum in response to the Motion, the Debtor argues that if he cannot invoke §547(b) directly, he may do so through §§522(g), (h).  Lerner agrees that §522(g), (h) is a statutory vehicle through which a chapter 7 debtor may exercise the trustee's avoidance powers.

---

[3]     Cognizant that there is contrary authority, I have held that chapter 13 debtors, like chapter 7 debtors, may not <u>directly</u> exercise the trustee's avoidance powers under chapter 5 of the Bankruptcy Code.  <u>See</u> <u>In re Atkins</u>, 525 B.R. 594, 603 (Bankr. E.D. Pa. 2015).

(Lerner's Mem. at 11).  He contends, however, that the Debtor cannot satisfy the requirements of §522(g), (h).

The Complaint nowhere cites §§522(g), (h).  However, in his response to the Motion, the Debtor argues, or at least implies, that the facts stated in the Complaint are sufficient to allow him to invoke §§522(g), (h) in order to exercise the trustee's §547 avoidance power.  Lerner disputes that the Complaint adequately pleads fact supporting the Debtor's §547(b) claim via §522(g), (h).

Again, Lerner is correct.

### 2.

Sections 522(g) and (h) provide:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> > (1)
> > > (A)  such transfer was not a voluntary transfer of such property by the debtor; and
> > >
> > > (B) the debtor did not conceal such property; or
> >
> > (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.
>
> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> > (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

In In re Funches, 381 B.R. 471 (Bankr. E.D. Pa. 2008), I described the bankruptcy policy that serves as the foundation of a chapter 13 debtor's exercise of the trustee's avoidance powers and the requirements for doing so under §§522(g), (h).  That discussion is equally pertinent in this adversary proceeding involving a chapter 7 debtor:

> [I]t is helpful to take a step back and examine the respective roles that a bankruptcy debtor and a trustee play in chapter 13 cases, particularly in connection with assets that may constitute "property of the estate."
>
> The starting point in this system is the distinction between property of the bankruptcy estate that is "non-exempt" and estate property that a bankruptcy debtor has the right to claim as "exempt."  Upon the commencement of a bankruptcy case, most of the bankruptcy debtor's property interests become bankruptcy estate property, see 11 U.S.C. §§541(a), 1306, and, as such, are available for payment of creditors' claims. Such property is frequently referred to as being "non-exempt."  However, the Bankruptcy Code provides a mechanism for individual bankruptcy debtors to protect or "exempt" certain property from property of the bankruptcy estate (and, therefore, from their creditors).  See 11 U.S.C. §522(b)(1). The purpose of the Bankruptcy Code's exemption provisions is to foster the historic "fresh start" goals embedded in modern bankruptcy policy by permitting a debtor to maintain assets sufficient for the basic necessities of life. The consequence of the assertion of [a] valid exemption is that an individual debtor's exempt property is not liquidated in a chapter 7 case and is not included in the calculation of the amount unsecured creditors are entitled to receive in distribution in a chapter 13 case under 11 U.S.C. §1325(a)(4).
>
> Typically, a prepetition "transfer" of property (however accomplished and whether the debtor transferred his or her entire interest in the property or only a fractional part thereof) extinguishes the debtor's ability to claim an exemption in the transferred property interest. This is because once transferred prepetition, the debtor's interest in the property will not be property of the estate upon the filing of the bankruptcy case, the result being that there is nothing in the estate for the debtor to exempt.
>
> Sections 522(g) and (h) of the Bankruptcy Code promote the goals of the statutory exemption provisions by providing the debtor with a means  –  subject to certain limitations  –  of (1) exempting prepetition transfers of property that the trustee recovers and brings into the bankruptcy estate or (2) independently exercising Code remedies for recovery of property that was transferred prepetition and then exempting the recovered property.

Section 522(g) enhances the debtor's exemption rights by empowering the debtor to exempt property that a trustee recovers through exercise of, <u>inter alia</u>, the trustee's avoidance powers.  Significantly, the debtor's right to exempt property the trustee recovers is subject to two (2) conditions, that: (1) the transfer of property was <u>involuntary</u> and (2) the debtor <u>did not conceal</u> the property involved.

Section 522(h) provides the debtor with the second tool mentioned above – the power to use the trustee's transfer avoidance powers to recover property that may be exempted. . . . .

The last part of the statutory structure has the most relevance for present purposes. Section 522(h), the source of the debtor's right to use the trustee's avoidance powers, also imposes two (2) limitations. It refers back to subsection (g)(1), thereby prohibiting the debtor from invoking the trustee's avoidance powers to avoid transfers that were <u>voluntary</u> or to recover property that the debtor <u>concealed</u>. The policy reasons why Congress would limit a debtor's right to exercise a trustee's avoidance powers in this manner are self-evident.  Where all of the statutory prerequisites under § 522(g)(1) and (h) have been satisfied, a debtor may use the trustee's avoiding powers for his or her own benefit.

<u>Funches</u>, 381 B.R. at 490-92 (footnotes and most citations omitted).

As the above passage explains, the Debtor's ability to exercise the trustee's avoidance powers is tied to the Debtor's exemption rights.  In this proceeding, when §§522(g) and (h) are read together, the Debtor's authority to exercise the trustee's powers boils down to two (2) requirements:

(1) each property was transferred involuntarily; and

(2) if recovered, the Debtor may exempt his interest in the property.

Lerner disputes the Complaint's adequacy with respect to both requirements.  While I conclude that the Debtor has pled adequately that the transfers were involuntary,[4] as explained

---

[4]    The Complaint's allegation that the transfers were involuntary is based on the events that occurred during the January 26, 2015 hearing in the C.P. Court.  In support of the Motion, Lerner has provided copies of the transcript of the January 26, 2015 hearing and a prior hearing held on April 9, 2009.  Lerner contends that the transcripts demonstrate that transfers were voluntary and therefore, that I should disregard the Debtor's involuntariness allegation in the Complaint as a mere legal conclusion. The

(continued...)

below, the Complaint is inadequate for other reasons with respect to the Four Properties.

## 3.

The Debtor never had an ownership interest in any of the Four Properties.  Each of the Four Properties was owned by an entity other than the Debtor at the time of the challenged transfer.  As a result, the Complaint is defective with respect to these properties for two (2) independent, interrelated reasons, one (1) based on §547(b) itself and the other based on §522(g)(h).

First, and most simply, §547(b) authorizes the trustee to avoid a transfer "of an interest of the debtor in property," not interests in property of entities other than the debtor.

Second, as described earlier, to state a claim under §§522(g), (h) and 547(b), the Debtor must be able to claim an exemption in each property if the transfer is avoided.  To be exemptible, property first must be property of the estate.  See 11 U.S.C. §522(b)(1) ("an individual debtor may exempt from property of the estate" the property listed in §522(b)(2) or (b)(3)).[5]  To be property of the estate, the property must be property owned by the debtor.  See 11 U.S.C.

---

[4](...continued)
Debtor has not questioned the authenticity of transcripts and therefore, I have considered them. However, after doing so, I conclude that they do not demonstrate definitively that the Debtor cannot establish the involuntariness of the transfers.  Each side can find support for its position in different parts of the transcripts.  The issue of involuntariness is not susceptible to being determined at this early stage of the adversary proceeding.

[5]    Section 522(b)(2) authorizes the debtor to claim the federal bankruptcy exemptions listed in §522(d).  Section 522(b)(3) authorizes the debtor to claim nonbankruptcy exemptions under state and federal law, interests in property owned as tenants by the entireties and certain retirement funds.  In this case, the Debtor has invoked the federal bankruptcy exemptions under §522(b)(2) and (d).

§541(a).[6]

In this case, the Debtor has pled that he holds an ownership interest in the entities that owned the Four Properties.  He has not pled that, as an individual, he has ever had an ownership interest in any of the properties themselves.

As the Seventh Circuit has stated:

> [C]orporate assets . . . are not property of the [individual] debtor and therefore cannot become property of [the debtor's] bankruptcy estate. Hence, the question of an exemption does not arise. For example, if the debtor owns shares in a corporation, the shares become part of the estate; the assets of the corporation do not.

Fowler v. Shadel, 400 F.3d 1016, 1019 (7th Cir. 2005) (citations omitted); accord In re Olick, 517 B.R. 549, 554 n.9 (Bankr. E.D. Pa. 2014), aff'd, No. 15-2483, 2016 WL 362430 (3d Cir. Jan. 29, 2016); In re D'Alessio, 2014 WL 201871, at *9 (Bankr. E.D.N.Y. Jan. 17, 2014); In re Coenen, 487 B.R. 539, 541 (Bankr. W.D. Wis. 2012); In re Billingsley, 338 B.R. 372, 375-76 (Bankr. C.D. Ill. 2006).[7]

Here, if the transfers at issue are avoided, there is no basis ownership of the properties to revert to the Debtor (or the bankruptcy estate), as opposed to the entities that owned the properties prior to the transfers. Without that ownership interest, the Debtor cannot claim an exemption.  That is a fatal defect.

---

[6]       11 U.S.C. §541(a) refers to property of the debtor as of the commencement of the case. It also states an interest in property recovered under 11 U.S.C. §550 becomes property of the estate.

[7]       The Debtor contends that the C.P. Court order that compelled him to to execute the mortgages on the properties "diminished" his "equity" or "extinguished" his "equitable interests in the entity."  (Debtor's Memorandum at 8).  I reject this argument.  The Debtor cites no authority for the proposition he has any "equity" in property owned by an entity in which he has an ownership interest or that the entity's transfer of property may be avoided under chapter 5 of the Bankruptcy Code because the value of the debtor's ownership interest in the entity itself is reduced.  The cases cited in the text above are  to the contrary.

-12-

For these reasons, the Complaint fails to state a claim under 11 U.S.C. §547(b) with

respect to the Four Properties.[8]

---

[8]        I am aware that the Debtor claimed his interest in one (1) of the Four Properties, 1904
Myrtle Drive, Bensalem, PA, as exempt residential real estate under 11 U.S.C. §522(d)(1) and that no
objections to his claimed exemption was filed timely.  See Fed. R. Bankr. P. 4003(b).  Ordinarily, this
would mean that the claimed exemption is final and effective.  See, e.g., Taylor v. Freeland & Kronz, 503
U.S. 638, 643-44 (1992) (Chapter 7 trustee could not contest validity of claimed exemption after 30-day
period for objecting had expired and no extension had been obtained, even though debtor had no
colorable basis for claiming exemption); In re Miller, 501 B.R. 266, 276 (Bankr. E.D. Pa. 2013) (claimed
exemption of property from bankruptcy estate becomes effective when deadline for objection under Rule
4003(b)(1) has expired and no objections have been filed).  Nevertheless, the finality of the Debtor's
claimed exemption under Rule 4003(b)(1) does not establish a plausible basis to conclude that the Debtor
may exempt an interest in  1904 Myrtle Drive.

        In cases decided under Rule 4003(b)(1), it was undisputed that the debtor had an
ownership interest in the property that was subject to a late-filed objection to the claimed exemption.
Here, the Debtor has claimed an exemption in property that he does not own.  In both his bankruptcy
Schedule C and the Complaint, the Debtor has represented that the owner of that property is the
Kashkashian Trust.

        Claiming an exemption in property that a debtor does not own necessarily is a nullity.
Exemptions only apply to property of the estate and property of the estate is limited to property owned by
the debtor as of the commencement of the case.  See 11 U.S.C. §541(a); Coenen, 487 B.R. at 541 ("if
property is never part of the bankruptcy estate, it cannot be exempted"); see also In re Gronczewski, 444
B.R. 526, 532 n.3 (Bankr. E.D. Pa. 2011) (citing cases holding that property transferred by debtor
pre-petition becomes estate property only after it has been recovered by bankruptcy trustee).  Neither the
chapter 7 trustee nor any interested party has any reason to object to a claimed exemption in non-estate
property.  See generally Schwab v. Reilly, 560 U.S. 770, 782 & n.7 (2010) (trustee had no reason or duty
to object to exemption claim that, on its face, did not impinge on trustee's ability to administer non-
exempt property).

        To illustrate, consider a debtor who owns one (1) share of stock in Comcast Corp, files a
chapter 7 bankruptcy and then claims as exempt his ownership of the Comcast Building in Philadelphia.
No one would seriously entertain the notion that the claimed exemption has any legal effect.  And, no one
would seriously suggest that the debtor (or the debtor's trustee) could set aside a transfer of the Comcast
Building by Comcast Corp. to a third party.  In this case, the connection between the Debtor and the
property claimed as exempt is closer but, in the end, there is no difference.  The Debtor claimed an
exemption in property that he does not own.  He has pled no plausible claim that he can exempt it even if
the transfer from the Kashkashian Trust to Lerner is set aside.

### D.  Dismissal with Leave to Amend

After granting motion to dismiss complaint under Rule 12(b)(6), a court should grant

plaintiff leave to amend unless an amendment would be inequitable or futile. <u>Alston v. Parker</u>,

363 F.3d 229, 235 (3d Cir. 2004).  Here, while it may be doubtful that the Debtor can cure the

defects in the Complaint with respect to the Four Properties,[9] it is appropriate to give the Debtor

a brief opportunity to do so.


## V.  CONCLUSION

For the reasons set forth above, Lerner's Motion to Dismiss the Complaint with respect to

the Four Properties will be granted and the Debtor will be granted leave to file an Amended

Complaint.

Date: <u>February 19, 2016</u>

_____
**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY**

---

[9]        The Debtor never sought prior court approval to exercise the trustee's powers on behalf
of the bankruptcy estate through the doctrine of "derivative standing."  <u>See</u> <u>Official Committee of
Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery</u>, 330 F.3d 548, 566 (3d
Cir. 2003); <u>In re National Forge Co.</u>, 326 B.R. 532, 543 (W.D. Pa. 2005); <u>In re Centaur, LLC</u>, 2010 WL
4624910, *4-5 (Bankr. D. Del. Nov. 5, 2010).   This makes it unlikely that he can directly exercise the
trustee's avoidance power under §547(b) directly.

        As for the use of §§522(g), (h), it also is unlikely that he can cure the defective
Complaint by now asserting that he personally owns some or all of  the Four Properties through any type
of "piercing the corporate veil theory."  The doctrine of <u>in pari delicto</u> comes to mind immediately.  <u>See</u>
<u>Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.</u>, 267 F.3d 340, 354 (3d Cir. 2001);
<u>American Trade Partners, L.P. v. A-1 Int'l Importing Enters., Ltd.</u>, 770 F. Supp. 273, 276 (E.D. Pa.
1991); <u>Official Comm. of Unsecured Creditors of Allegheny Health Educ. and Research Found. v.
PricewaterhouseCoopers, LLP</u>, 989 A.2d 313, 329 (Pa. 2010).